# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Daniel D. Domenico

Civil Action No. 1:20-cv-02040-DDD

K.K.,

      Plaintiff/Claimant,

v.

KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY,

      Defendant/Respondent.

---

## ORDER AFFIRMING DECISION OF
## ADMINISTRATIVE LAW JUDGE

---

This is a Social Security benefits appeal brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff challenges the final decision of the Defendant Commissioner of Social Security, denying her application for disability benefits. An administrative law judge ("ALJ") denied Plaintiff's application and the agency's Appeals Council denied her request for review. The ALJ ruled that Plaintiff was not disabled within the meaning of the Social Security Act. This appeal followed. (Doc. 14.) The ALJ's decision is affirmed.

## BACKGROUND

Plaintiff contends various mental health and spinal issues render her disabled and thus entitled to Supplemental Security Income benefits under the Social Security Act. She was 27 years old on the alleged onset

date of July 25, 2017. ((Administrative Record ("R.") (Doc. 14) at 13.)[1] Her highest grade completed is the sixth grade. (R. 263.) Plaintiff applied for supplemental security income on September 22, 2017. (R.13.) She alleges that she "suffers from a number of debilitating conditions, including Asperger's syndrome, attention-deficit hyperactivity disorder, depression, anxiety/panic disorder, obesity, and cervical spinal issues." (Doc. 15 at 3.) The claim was denied on April 19, 2018, and Plaintiff requested and received a hearing on July 24, 2019, before an ALJ. (R.13.)

On August 20, 2019, the ALJ issued a written decision in accordance with the "oft-repeated five-part five-step sequential evaluation process for determining whether Plaintiff is disabled." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). The inquiries at each step of that evaluation are as follows:

- Step one: did claimant establish she is not engaged in "substantial gainful activity"? 20 C.F.R. §§ 404.1520(b), 404.1572.

- Step two: did claimant establish she has a "medically severe impairment or combination of impairments"? *Id.* §§ 404.1520(c), 404.1520a-404.1523.

- Step three: is claimant's "medically severe impairment," alone or in combination with other impairments, equivalent to any impairments specifically

---

[1]  For clarity, the Administrative Record is Doc. 14 on the docket. The page numbers cited as "R.X" in this order refer to the numbers at the bottom-right hand side of the pages in Doc. 14. They differ from those cited in the ALJ's decision and from the page in the docket.

listed in the regulations? *See id.* §§ 404.1525-404.1526 & pt. 404, subpt. P. App. 1. If yes, the impairment is conclusively presumed disabling. *Id.* § 404.1520(d).

- Step four: if claimant's "medically severe impairment" is unlisted, did she show that her impairment prevents her from performing work she has previously performed? *Id.* § 404.1520(e)-(f).

- Step five: if claimant is not considered disabled at step three, but has met her burden at steps one, two, and four, then did the Commissioner show that claimant has the residual functional capacity to perform other work in the national economy in view of her age, education, and work experience? *Id.* § 404.1520(g).

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since September 22, 2017. (R.15.) At step two, the ALJ found that Plaintiff "has the following severe impairments: cervical radiculopathy with cervical and thoracic pain, obesity, Asperger's syndrome, attention deficit hyperactivity disorder (ADHD), and major depressive disorder." (R.15.) The ALJ also found evidence of other impairments, including right eye metamorphopsia, polycystic ovarian syndrome, migraines, and insomnia, but found that they were "non-severe." (R.15-16.) The ALJ discussed the findings of Yvonne Morrisey, a consultative ophthalmologist, that Plaintiff's "vision was stable and did not affect the claimant's ability to perform visual tasks or avoid ordinary hazards." (R.15.) Regarding Plaintiff's migraines, the ALJ found that Plaintiff had "minimal accompanying treatment," and her "July 2018 brain magnetic resonance imaging revealed no abnormalities." (R.16.)

- 3 -

The ALJ also found that Plaintiff's "insomnia is associated with very loud neighbors rather than being physiological or psychological in origin." (R.16.) These four impairments, the ALJ explained, "cause no more than minimal limitations in her ability to perform basic work activities and are non-severe." (R.16.)

At step three, the ALJ found Plaintiff's impairments, while severe, did not meet or medically equal any of the "listed" impairments in the Social Security regulations. (R.16.) Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity. (R.18.) The ALJ concluded that Plaintiff had the residual functional capacity "to perform light work requiring routine task and simple decision making." (*Id.*) The ALJ further elaborated that "[t]he claimant can have occasional close proximity with co-workers and supervisors, meaning that claimant cannot function as a member of a team; and should have minimal to no direct contact with the public." (R.18-19.) The ALJ found the prior administrative finding by Dr. Robert Hander, an agency medical consultant, that Plaintiff could "perform light work; frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; occasionally stoops; frequently kneel, crouch, and crawl; and should avoid concentrated exposure to vibration and extreme heat" persuasive. (R.21.) The ALJ found the prior administrative finding of Dr. Leslie Postovoit, a state psychological consultant, that Plaintiff could "sustain simple and repetitive tasks, have occasional contact with co-workers and supervisors, and no interaction with the public persuasive." (*Id.*) The ALJ, however, found the portion of Dr. Postovoit's opinion that Plaintiff "could perform simple and repetitive tasks for two-hour increments" unpersuasive in part because Dr. Postovoit "provided no accompanying explanation" and in part because it seemed inconsistent with the other evidence

in the record indicating that Plaintiff could perform unskilled work "requiring routine tasks and simple decisionmaking." (*Id.*)

At step four, the ALJ concluded that Plaintiff had no past relevant work. (R.22.) Finally, at step five, the ALJ found that Plaintiff's residual functional capacity permits her to work as a marker, maid, or router clerk, and that each of these jobs exist in sufficient numbers in the national economy. (R.22-23.)

The ALJ accordingly found that Plaintiff was not entitled to Social Security benefits. (R.23.) Plaintiff then filed this action seeking review of the ALJ's August 20, 2019 decision. (Doc. 1.)

## ANALYSIS

Plaintiff argues that the ALJ cherry-picked evidence that supported her conclusion and that there is other evidence that the ALJ did not analyze, or did not analyze properly, that undermines the decision. (Doc. 15.) While the record might have supported a decision either way, the Court cannot second-guess the ALJ's decision. The ALJ properly assessed the medical reports and other parts of the record Plaintiff points to under the governing regulations, and her conclusion is supported by substantial evidence in the record. That is all that is required for this Court to affirm the decision.

## I.   Legal Standards

### A. Rules Governing the ALJ's Determination

"In determining whether an individual is disabled, [an ALJ] consider[s] all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR

16-3p, *2 (2017). If the evidence provided by an applicant is consistent and sufficient to make a decision, the Commissioner's determination will be "based on that evidence." 20 C.F.R. § 416.920b(a). There is a "difference between what an ALJ must consider as opposed to what [s]he must explain in the decision." *Mounts v. Astrue*, 479 F. App'x 860, 866 (10th Cir. 2012) (unpublished). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). An ALJ "will consider all of the evidence presented, including information about [an applicant's] prior work record, [an applicant's] statements about [her] symptoms, evidence submitted by [her] medical sources, and observations by [the Administration's] employees and other persons." 20 C.F.R. § 416.929(c)(3) (2017).

With these overarching principles in mind, the regulations specify five categories of evidence: (1) objective medical evidence, (2) medical opinion, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913 (2017).

"Objective medical evidence is medical signs, laboratory findings, or both." § 416.913(a)(1). The Social Security Administration must "always attempt to obtain objective medical evidence and, when it is obtained, [they] will consider it in reaching a conclusion as to whether [an applicant] [is] disabled." 20 C.F.R. § 416.929(c)(2). An ALJ "will evaluate [an applicant's] statement in relation to the objective medical evidence." § 416.929(c)(4). Effective March 27, 2017, the Social Security Commissioner changed the regulations regarding evaluation of evidence for claims filed on or after that date, including a narrower definition of "medical opinion." Under the applicable regulations, a medical opinion is a statement from a medical source about what an applicant can still

do despite her impairment(s) and whether she has one or more impair-
ment-related limitations or restrictions listed:

> (A) Ability to perform physical demands of work activities, such as
> sitting, standing, walking, lifting, carrying, pushing, pulling, or other
> physical functions (including manipulative or postural functions,
> such as reaching, handling, stooping, or crouching);

> (B) Ability to perform mental demands of work activities, such as un-
> derstanding; remembering; maintaining concentration, persistence,
> or pace; carrying out instructions; or responding appropriately to su-
> pervision, co-workers, or work pressures in a work setting;

> (C) Ability to perform other demands of work, such as seeing, hear-
> ing, or using other senses; and

> (D) Ability to adapt to environmental conditions, such as temperature
> extremes or fumes.

§ 416.913(a)(2)(i).

For medical opinions and prior administrative findings, an ALJ must
expressly consider and evaluate the persuasiveness of each. 20 C.F.R. §
416.920c (2017). But "[b]ecause many claims have voluminous case rec-
ords containing many types of evidence from different sources, it is not
administratively feasible for" an ALJ to articulate her consideration of
the factors for each medical opinion. *Id.* at § 416.920c(b)(1).

Acceptable medical sources include licensed physicians, licensed psy-
chologists, and licensed advanced practice registered nurses. 20 C.F.R.
§ 416.902(a). The Social Security Administration provided an interpre-
tation of its regulations that notes that medical evidence from medical
sources regarding a claimant's pain or symptoms is also important to an
evaluation of a claimant's statements. SSR 16-3P(d) (2017), 2017 WL
5180304. These findings are used "in evaluating the intensity, persis-
tence, and limiting effects of the individual's symptoms." *Id.*  ALJs,

moreover, "must consider the findings from these medical sources even though they are not bound by them." *Id.*

Under the regulations, a diagnosis, prognosis, or judgment about the severity of a condition, however, is not a "medical opinion," but is "other medical evidence." 20 C.F.R. § 416.913(a)(3) (2017); *Duran v. Berryhill*, 2019 WL 1370101, *9 (D. N.M. March 26, 2019) (report containing results and interpretation of standardized tests, a summary of information claimant provided in a behavioral rating, diagnoses and recommendations were not medical opinions under 2017 regulations).

Information from both medical sources and nonmedical sources regarding an applicant's pain or other symptoms is "an important indicator of the intensity and persistence of [an applicant's] symptoms." § 416.929(c)(3). While an ALJ will consider the statements of a non-medical source in relation to a claimant's statements and the remaining evidence (*see* SSR 16-3P(c)), "an ALJ is not required to make specific, written findings regarding each third-party or lay opinion when the decision reflects that the ALJ considered the opinion." *James M.M. v. Saul*, 20-4006-JWL, 2020 WL 6680386, at *4 (D. Kan. Nov. 12, 2020) (citing to *Blea v. Barnhart*, 466 F.3d 903, 914-15 (10th Cir. 2006) and *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996)). An ALJ does not have to discuss how she considered statements from nonmedical sources in the same way as is required for medical opinions. § 416.920c(d). And an ALJ does not have to articulate her consideration of statements on issues reserved for the Commissioner (such as whether a claimant is disabled). § 416.920b.

The applicable regulations include a new section titled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. §§

404.1520c, 416.920c (2017). Among other changes, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions(s) or prior administrative medical finding(s), including those from [a claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

## B. Rules Governing This Court's Review of the ALJ Determination

This Court reviews the Commissioner's decision to determine whether substantial evidence in the record supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is the amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005).

The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In reviewing the Commissioner's decision, however, the court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). A court must also "exercise common sense in reviewing an ALJ's decision and must not insist on technical perfection." *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (internal quotations omitted). Plaintiff bears the "burden to present evidence establishing her impairments meet or equal listed impairments."

*Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

If a court finds that an ALJ failed to explicitly weigh a medical opinion, it may nevertheless affirm the decision after analyzing whether such a failure constitutes harmless error. An ALJ's failure to weigh a medical opinion is harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity "because giving greater weight to [the opinion] would not have helped her." *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014).

## II.    Application

Plaintiff accuses the Commissioner of failing to consider certain pieces of evidence and discussing only those portions of the record that support the ALJ's decision. A challenge of this sort is a difficult one to mount given the substantial evidence standard the Court must apply.

Although, as the Commissioner recognizes, the record here could have supported a contrary finding, there is also much more than a scintilla in support of the ALJ's decision. The 10-page opinion followed a hearing, consideration of "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and "careful consideration of the entire record" (R.15, 19). *See Wall v. Astrue*, 561 F.3d 1084, 1070 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) ("Where, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ 'at [his] word.'"). The ALJ noted that Plaintiff's brain MRI revealed no abnormalities; her insomnia was "associated with very loud neighbors"; her cervical spine MRI revealed

no abnormalities; her psychiatric examinations revealed good attention, insight, and logical thought processes; and her neuropsychological testing revealed average memory, above average executive function, coherent thought processes, and a normal mini mental status exam. (R.16-17.) The ALJ examined Dr. Morrisey's opinion on Plaintiff's visual restrictions. (R.16.) The ALJ assessed Dr. Hander's findings, including that Plaintiff "could perform light work" and "frequently climb ramps and stairs," within the context of the other evidence in the record. (R.21.) The ALJ also assessed Dr. Postovoit's opinions—that plaintiff could sustain simple and repetitive tasks for two-hour increments, have occasional contact with co-workers and supervisors, and no interaction with the public—in light of the evidentiary record. (*Id.*)

Most of the evidence Plaintiff accuses the ALJ of ignoring was in fact considered, and most of what she claims were medical opinions are not under the applicable standards. To the extent there were omissions from the ALJ's review, they were harmless and insufficient to overwhelm the significant evidence in the record supporting the determination.

### A. Leslie Postovoit, Ph.D.

Plaintiff first asserts that the ALJ's "use of Dr. Postovoit's agency opinion as to her more expansive thoughts on Plaintiff's abilities, yet dismissing Dr. Postovoit's agency opinion as to limitations on the number of hours Plaintiff could perform simple or repetitive tasks" was improper. (Doc. 15 at 9.)

The Court admits to some puzzlement about this portion of the ALJs' decision and the dispute surrounding it. Both Plaintiff and the ALJ seem to proceed as if Dr. Postovoit had said that Plaintiff could *not* perform tasks for two hours. But in fact, that opinion says, "Claimant is able to sustain simple & repetitive tasks for two-hour increments, in a normal

8-hr workday with breaks." (R.81.)  This is in fact consistent with the ALJ's conclusion that Plaintiff could perform unskilled work, which, by definition, requires maintaining attention in two-hour segments. *See* Social Security Administration Program Operations Manual System DI 25020(B)(3), Mental Limitations, 2001 WL 1933437.  Thus, even under this portion of Dr. Postovoit's opinion, Plaintiff is able to do the work identified by the vocational expert and relied upon by the ALJ.

To the extent that statement suggested that Plaintiff could not work, the ALJ explained why she did not credit that portion of the medical opinion: it was inconsistent with the other evidence in the record supporting the conclusion that Plaintiff could perform unskilled work involving routine tasks and simple decisionmaking (e.g., Plaintiff's MRI results, physical therapy records, etc.). (*See* R. 21; *see also* R. 269, 309, 313, 332-34, 372, 386, 396-97, 399-400.)   This argument goes to the weight of evidence, and the Court is precluded from reconsidering such a determination. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016); *see also Lane v. Colvin*, 643 F. App'x 766, 770 (10th Cir. 2016) ("Because there is no actual conflict between a limitation on frequent and prolonged interaction with supervisors and co-workers and the [] job identified by the [] testimony, any oversight by the ALJ in including this limitation is harmless error.").

### B. Dr. Olson

Plaintiff asserts that the ALJ failed to give her treating providers, Dr. Olson, Dr. Ashby, and Ms. Smith, proper weight and analysis. But the treating source rule she relies on is no longer applicable. *See* 20 C.F.R. § 416.920c(a).

Plaintiff also contends Dr. Olson provided a "medical opinion" under the Social Security Administration's regulations, and that the ALJ was

therefore obligated not only to consider it, but to specifically articulate the weight she gave it. Dr. Olson, however, did not render a medical opinion under the current regulations. Dr. Olson evaluated Plaintiff and completed several forms. On one he checked the box under "mental or cognitive disorders," categorizing Plaintiff as "totally and permanently disabled." (R.262.) This is not a medical opinion because it does not indicate what the Plaintiff can do despite her impairment. *See* § 416.913(a)(2)(i). While it falls under the "other medical evidence" category, the ALJ did not have to provide any analysis for how she considered this evidence because it is a statement reserved for the Commissioner. *See* § 416.920b(c)(3).

Next, Dr. Olson checked a box on a form representing that Plaintiff's mental conditions resulted in at least two marked restrictions or one marked restriction and repeated episodes of decompensation for extended periods. (R.262.) This checkmark is not a medical opinion either because it fails to demonstrate what Plaintiff can do despite her impairment. *See* § 416.913(a)(2)(i). Again, although it would be classified as "other medical evidence," it is not evidence that the ALJ had to provide her analysis for because the ALJ is not required to discuss a statement that Plaintiff met a mental impairment listing. *See* § 416.920b(c)(3)(iv).

On another form, Dr. Olson circled boxes on a residual functional capacity scoring matrix, indicating Plaintiff's age, education, communication barriers, previous work history, and limitations related to understanding, remembering, carrying out instructions, use of judgment, concentration, and response in a work environment. (R.263.) The circles made on the Med-9 form residual functional capacity scoring matrix are not a medical opinion. *See* § 416.913(a)(2)(i). Instead, even though some of the circles would be classified as "other medical evidence," the ALJ did not have provide her analysis of them because the Med-9 form states

that the "County" is supposed to complete this section, and decisions by other governmental agencies" are "[e]vidence that is inherently neither valuable nor persuasive." § 416.920b(c)(1).

The ALJ's treatment of Dr. Olson's statements was consistent with the agency's revised regulations.

### C. Ms. Gorman

Plaintiff next argues that the ALJ improperly failed to consider the evidence from Ms. Gorman, the social worker/therapist who evaluated her. But while the ALJ discussed some of Ms. Gorman's report (*See* R. 20), Ms. Gorman, a therapist/social worker, is not an acceptable medical source under 20 C.F.R. § 416.902(a) (*see* R.319), which means that her statements are not medical opinions. *See* § 416.920c(d). So, while the ALJ still had to consider the evidence from Mr. Gorman, as it was part of the record as a whole and falls under "evidence from nonmedical sources," the ALJ was not required to evaluate it under the regulations specific to medical opinions or to provide any particular explanation of her assessment. Indeed, the ALJ referenced Ms. Gorman's report and findings. (*See* R.20.)

Plaintiff also argues that the decision cherry-picked aspects of Ms. Gorman's report. As the Commissioner notes, this sort of argument "is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r*, 748 F.3d 723, 726 (6th Cir. 2014). Such is the case here. The record reveals that the ALJ accounted for each of the issues raised by Plaintiff, but simply analyzed them differently than she urges this Court to. While precedent frowns on selective and incomplete use of the record, the substantial evidence standard of review prevents this Court from "reweighing the evidence or

substituting judgement for that of the ALJ." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

Ms. Gorman opined that Plaintiff had to stay with her mother at the store due to social anxiety, and that Plaintiff "suffers from extreme anxiety to the point of agoraphobia." (Doc. 15 at 12.) But the ALJ did not ignore these facts. The decision discussed Plaintiff's "anxiety in the presence of other people" and ability to "shop in Walmart for long periods of time with her mother." (R.17, 20.) And there are numerous references to Plaintiff's anxiety, panic disorder, and "anxiety in the presence of unfamiliar individuals." (R.17, 20.) The ALJ acknowledged Plaintiff's testimony regarding difficulties with social situations but explained that evidence was inconsistent with the psychiatric examinations in the record. (R.20.) The ALJ also included that "[b]y February 2018, the claimant reported that symptoms of panic disorder were stable on her current medication regimen." (*Id.*) Plaintiff's argument appears to go to the weight of the evidence assigned by the ALJ. *See Allman*, 813 F.3d at 1333 (ALJ "entitled to resolve such evidentiary conflicts").

### D. Dr. Ashby

Plaintiff likewise contends that the ALJ incorrectly cherry-picked Dr. Ashby's report and neglected to properly weigh Dr. Ashby's medical opinions under the relevant regulations. Plaintiff recognizes that the ALJ made "some parenthetical observations" about the evidence from Dr. Ashby, who evaluated and performed neuropsychological testing on Plaintiff, but nevertheless claims she failed to address the "meat of the treatment provided and opinions rendered." (Doc. 15 at 10.)

Plaintiff asserts that Dr. Ashby's psychological evaluations and findings that Plaintiff has "severe impairment for visual discrimination (less than first percentile)" and "difficulties with attentional processing

systems as well as difficulties in left temporal lobe functioning" are medical opinions that the ALJ failed to properly analyze. None of these amount to medical opinions under current regulations because none address what Plaintiff "can still do despite [these] impairments." *See* 20 C.F.R. § 416.913(a)(2)(i). These statements are, like Dr. Olson's, "other medical evidence," as they include judgments about the nature and severity of Plaintiff's impairments, diagnosis, treatment, and prognosis. *See id.* (a)(3). Thus, the ALJ did not have to specifically address how persuasive she found Dr. Ashby's determinations of the psychological evaluation results, "visual discrimination," or "difficulties in temporal lobe functioning."

The ALJ noted Plaintiff's "good attention" and "cooperative nature," but according to Plaintiff, ignored discussing portions of the record describing her relationship issues, conflict management, and poor concentration. (Doc. 15 at 10-11.) Plaintiff asserts that the ALJ failed to appropriately discuss the following aspects of Dr. Ashby's report: (1) depression screening resulting in an indication of severe depression; (2) mildly impaired attention issues; (3) 5th percentile in auditory attention capacity; (4) 10th percentile in sustained attention; (5) diagnoses of ADHD, Asperger's Syndrome, Major Depressive Disorder, Social Anxiety Disorder, and Memory Deficit; (6) difficulties with attentional processing systems as well as difficulties in left temporal lobe functioning; and (7) severe impairment for visual discrimination. (Doc. 17 at 3.)

But the ALJ didn't ignore these concerns; she expressly addressed all but one of them, even if Dr. Ashby was not specifically named each time. The ALJ noted the neuropsychological testing results that Plaintiff had mild impairment in attention, (R.21.), which is how Dr. Ashby characterized Plaintiff's auditory attentional capacity ("mild to moderate impairment") and sustained attention results ("mildly impaired") (R.373).

The ALJ also included Plaintiff's diagnoses of attention deficit hyperactivity disorder, major depressive disorder, and Asperger's Syndrome. (R.17, 20.) Even though the ALJ did not specifically reference Plaintiff's "difficulties with temporal lobe functioning," the ALJ did note that Plaintiff "reported difficulties with understanding and following instructions," "reported difficulties with focusing, completing tasks, and concentration," and "occasionally lost focus." (R.17-18.) The ALJ addressed facts that supported and undercut the conclusion. It is the role of the ALJ to "resolve such evidentiary conflicts," of which the Court may not "reweigh." *Allman*, 813 F.3d at 1333.

Although Dr. Ashby's finding on Plaintiff's visual discrimination was not a medical opinion that the ALJ had to articulate in accordance with the regulations, it is "other medical evidence" and is still a part of the record that the ALJ had to consider. *See* § 416.929(c)(3). But there's a "difference between what an ALJ must consider as opposed to what [s]he must explain in the decision." *Mounts*, 479 F. App'x at 866. While the ALJ did not explicitly discuss Dr. Ashby's visual discrimination findings, there is substantial evidence to support the ALJ's conclusion that Plaintiff's eye impairments were non-severe. *See Jones*, 514 F. App'x at 823 (court "must not insist on technical perfection"); *see also Clifton*, 79 F.3d at 1009 ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). The visual discrimination is certainly evidence that counters the ALJ's determination that Plaintiff's vision problems were "non-severe," but it does not "overwhelm" the evidence from Dr. Morrisey, which the ALJ did discuss. *See Grogan*, 399 F.3d at 1261-62. The ALJ discussed the medical opinion of Dr. Morrisey that found that Plaintiff's "vision was stable and did not affect the claimant's ability to perform visual tasks or avoid ordinary hazards. (R.15-16.)

### E.  Ms. Smith

Plaintiff advances two arguments that Ms. Smith's evaluations were evaluated in error. First, Plaintiff accuses the ALJ of cherry-picking. Second, Plaintiff contends that the ALJ failed to properly articulate the persuasiveness and factors analysis required for medical opinions. Plaintiff is correct: The ALJ did not provide analysis on how persuasive Ms. Smith's findings were. But that's not an error because Ms. Smith did not provide a medical opinion.

While Ms. Smith, a nurse practitioner, is an acceptable medical source, *see* 20 C.F.R. § 416.902(a)(7), she did not provide a medical opinion that the ALJ was required to provide specific analysis for in accordance with the medical opinion regulations.[2]

Ms. Smith provided the following statements:

- She interpreted Plaintiff's depression screening results as "severe" (R.304);
- She noted in Plaintiff's psychological evaluation that Plaintiff had "decreased" eye contact, was fidgety, "can't sit still," and had a "subdued, depressed" mood (R.302);
- She wrote that Plaintiff would benefit from having an emotional support dog with her at all times (R.379);
- She wrote that Plaintiff had anxiety, depression, and insomnia that was increased by disruptive neighbors (R.378); and
- She wrote that Plaintiff was a patient under her care who had been diagnosed with several mental impairments, including Asperger's syndrome, attention-deficit hyperactivity disorder, insomnia, and major depressive disorder (R.377).

---

[2]   Commissioner acknowledges that she provided the incorrect regulations in her reply. (Docs. 16, 19.)

These are not "medical opinions" because they do not specify what Plaintiff "can still do despite [her] impairment(s)." § 416.913(a)(2). Instead, these statements are "other medical evidence" because they are "judgments about the nature and severity of [Plaintiff's] impairments," diagnoses, and prognoses. *Id.* (a)(3). These are still statements that the ALJ had to consider but not necessarily discuss. *See Mounts*, 479 F. App'x at 866. The record demonstrates that the ALJ considered all the evidence. *See Clifton*, 79 F.3d at 1009.

First, the ALJ did not have to discuss Ms. Smith's findings that Plaintiff's depression screening results were "severe" because that is a determination reserved for the Commissioner. *See* § 416.920b(c). Second, the ALJ discussed Plaintiff's loss of focus and depression. (R.17-18, 20.) Third, the ALJ neglected to discuss Ms. Smith's finding regarding Plaintiff's need for a support dog to always be with her, but she did reference Plaintiff's testimony that Plaintiff "enjoys time with her dog." (R.18.). Fourth, the ALJ did discuss that Plaintiff's "insomnia is associated with very loud neighbors rather than being physiological or psychological in origin." (R.16.) Finally, the ALJ noted Plaintiff's impairments, including Asperger's syndrome, attention-deficit hyperactivity disorder, insomnia, and major depressive disorder. (R.15-16.) To the extent that the ALJ failed to consider these pieces of evidence, none of them overwhelm the ALJ's findings. *See Grogan*, 399 F.3d at 1261-62.

While Plaintiff argues the ALJ overlooked evidence of her anxiety and depression, the ALJ in fact observed that Plaintiff had been diagnosed with major depressive disorder and referenced that Plaintiff's examinations "revealed signs of anxiety and depression." (R.20.)

Thus, the ALJ reasonably evaluated the evidence consistent with the agency's revised regulations, and her findings are supported by substantial evidence.

## CONCLUSION

The ALJ's decision is not overwhelmed by other evidence in the record and is supported by substantial evidence. The decision is therefore AFFIRMED. Commissioner's Motion for Leave to File Sur-Reply Brief (Doc. 19) is GRANTED.

DATED: March 18, 2022          BY THE COURT:

Hon. Daniel D. Domenico